IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| JOSEPH WAGGONER AND CLIFFORD TEFTELLER, ON BEHALF OF THEMSELVES AND ALL SIMILARLY SITUATED INDIVIDUALS, <br><br>    Plaintiffs, <br><br> v. <br><br> VSE CORPORATION, ET AL., <br><br>    Defendants. | CIVIL ACTION NO. 5:18-CV-00058-RWS |

## ORDER

Before the Court is Plaintiffs' Unopposed Motion to Approve Settlement, for an Award of Fees and Expenses and for Entry of Final Order and Judgment and Memorandum in Support (Docket No. 152). Having carefully reviewed the motion, the record in this matter, and the applicable law, the motion is **GRANTED.**

**I. Background**

    **a. Plaintiffs' claims**

This lawsuit was filed pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Plaintiffs Joseph Waggoner and Clifford Tefteller ("Plaintiffs"), on behalf of themselves and all other similarly situated individuals, filed this case on April 19, 2018 on behalf of all current and former non-exempt, hourly-paid employees of Defendants VSE Corporation; XOtech Solutions, Inc.;[1] and White's Paint Blast, L.L.C. (collectively, "Defendants") who worked

---

[1] The legal name of this Defendant is XOTech, LLC. XOTech Solutions, LLC and XOTech, LLC both refer to the same defendant.

at Red River Army Depot in Texarkana, Texas ("Red River") at any time between April 19, 2015[2] and the date of judgment, alleging that Defendants violated the FLSA by providing unpaid 15-minute rest breaks to them and other similarly situated employees. Docket No. 1. Defendants are federal contractors or subcontractors that provided labor and other services at Red River pursuant to a contract with the Department of Defense. Plaintiffs worked for Defendants at Red River rebuilding, maintaining and providing other services related to a variety of military vehicles, systems and components.

In or around January 2017, VSE entered into a collective bargaining agreement (the "CBA") with Plaintiffs' Union, which applied to VSE and its subcontractors—the other Defendants. The CBA provides, in relevant part:

- Ten (10) consecutive hours, exclusive of a meal period of a minimum of thirty (30) minutes, shall constitute a normal work shift.

- All employees will receive two (2) uninterrupted unpaid fifteen (15) minute rest periods per day. . . . In the event any employee is required to work beyond any ten (10) hour work day, exclusive of a meal period . . . the affected employee will receive an additional unpaid fifteen (15) minute rest period during each two hour period of additional work.

- In the event any employee is required to work beyond any ten (10) hour work day, exclusive of a meal period of a minimum of thirty (30) minutes and two (2) unpaid rest periods, the affected employee will receive an additional unpaid fifteen (15) minute rest period during each two hour period of additional work.

- The overtime rate will be time and one-half (1 1/2) the employee's regular working rate of pay for all hours worked over forty (40) in a workweek. Nothing in this Agreement shall be construed as to require the payment of overtime on overtime, or compounding of overtime, as a result of computing hours in accordance with this Article.

---

[2] Although Plaintiffs' Complaint alleges the claims go back to April 19, 2015, the relevant time period for purposes of this case is May 16, 2017 through June 24, 2018. The Parties agree that the rest break policy or practice at issue did not begin until May 16, 2017 and was discontinued by June 24, 2018.

Docket No. 130 ¶ 12–14, ¶ 17.

The policy of providing two unpaid fifteen (15) minute rest breaks each day was in place for Plaintiffs and the Opt-In Plaintiffs ("Opt-Ins") beginning on or around May 16, 2017. The policy ended for Plaintiffs and the Opt-Ins when Defendants began paying them for the fifteen (15) minute rest breaks on June 24, 2018.[3] Thus, the relevant period for this litigation is May 16, 2017 through June 25, 2018, *i.e.*, when the unpaid break policy was in effect. Additional scheduling and compensation information is described in the Parties' Joint Statement of Stipulated, Undisputed Material Facts in Relation to the Parties' Cross-Motions for Partial Summary Judgment. Docket No. 130.

Plaintiffs allege that Defendants' unpaid rest break policy violates the FLSA because the 15-minute rest breaks should have been paid. *See* 29 C.F.R. § 785.18 ("Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked."). Plaintiffs sought compensation at their overtime rate for the unpaid rest breaks in overtime weeks (*i.e.*, those weeks in which they worked at least forty hours in addition to additional, uncompensated break time).

Defendants have disputed which breaks are recoverable through the lawsuit. Defendants also dispute that any violation of the FLSA was willful and have contended that they acted in good faith and had reasonable grounds for believing they were in compliance with the FLSA.

---

[3] To determine the relevant time period, Defendants provided Plaintiffs' counsel with a representative sample of documents from before, during and after the relevant time period, showing the hours worked and pay received by a number of representative individuals who worked for each of the three Defendants. The Parties reviewed documents and other relevant information to determine the correct time period over the course of several months, and Plaintiffs and their counsel are satisfied that the unpaid rest break policy was only in place during the Relevant Time Period.

### b. Procedural history

Attempting to reach an early resolution, on August 17, 2018, the Parties filed a joint memorandum with the Court proposing a plan for an agreed conditional certification, notification to putative class members and early settlement efforts, including early mediation (Docket No. 64), which the Court entered. Docket No. 76. Before the issuance of notice to the putative collective action members, 500 individuals, many of whom learned about the case through social media and word of mouth, had already joined the case. *See* Docket No. 130 ¶ 93. Subsequently, notice issued and an additional 271 individuals joined the case. After fifteen voluntary dismissals and one additional opt-in, 757 individuals plus the two Named Plaintiffs remained in the case.

As the Parties were preparing the settlement papers, they discovered that six Opt-Ins did not work during the Relevant Time Period. Those six individuals have voluntarily withdrawn their consents to join, bringing the final number to 753 individuals. *See* Docket Nos. 151, 154.

Finally, after a settlement was reached, approximately 30 individuals who had missed the original deadline to file their consents to join came forward, expressing their desire to assert their claims in the case as well. The Parties subsequently negotiated additional relief for those individuals, as described herein and in the Settlement Agreement. Twenty of these individuals have filed their consents to join.

Accordingly, the final number of Plaintiffs and Opt-In Plaintiffs who will partake in the settlement, if approved, is 773. The 753 Plaintiffs and Opt-In Plaintiffs who timely filed their consents to join are reflected on Exhibit 1 to the Corrected Settlement Agreement and Release (Exhibit A, attached to Docket No. 153). The 20 Late Opt-Ins are reflected on Exhibit 2 to the Settlement Agreement. *Id.*

Through informal discovery, the Parties exchanged documents and information relating to each of the Plaintiffs and Opt-Ins, including voluminous records of their hours worked and compensation received. The parties also exchanged a variety of other documents, *e.g.*, the CBA; contracts between Defendants and the Department of Defense; and documents relating to Defendants' assertion of the good faith defense (which, if successful, would bar Plaintiffs' entitlement to liquidated damages).

On April 23, 2019, the Parties attended a private mediation with mediator Bill Lemons. At the mediation, a legal issue regarding the calculation of damages—specifically, which breaks are recoverable through the lawsuit—emerged as a barrier to settlement. The mediation was unsuccessful.

In order to resolve this issue, the Parties proposed submitting cross-motions for partial summary judgment based on stipulated facts and planned to continue mediation after the Court ruled on the cross-motions. On June 17, 2019, the Court issued an Order with a briefing schedule for the Parties to file their cross-motions. Docket No. 127. The arguments were exhaustively briefed—including a Joint Statement of Stipulated Undisputed Facts; three briefs filed by Plaintiffs and another three filed by Defendants, constituting over 110 pages (with over 250 pages of attached exhibits). *See* Docket Nos 130–38. Briefing was completed on the cross-motions on October 10, 2019. Docket. Nos. 137–38.

With the motions pending, the Parties continued to discuss settlement, and on January 14, 2020, during a second private mediation with the Honorable Edward A. Bobrick, they reached an agreement to settle. Then, after the settlement was reached, approximately 30 individuals who had missed the consent to join deadline but still wanted to assert their claims, came forward, and 20 of those individuals eventually filed their consents to join (collectively, the "Late Opt-Ins"). The

Parties negotiated a separate amount of relief for the Late Opt-Ins, which is described in the final version of the Settlement Agreement. Plaintiffs now seek approval of the settlement.

Plaintiffs move this Court for an Order (i) finally certifying the collective for purposes of settlement only; (ii) approving the settlement as a fair and reasonable resolution of Plaintiffs' disputed claims under the FLSA; (iii) approving Plaintiffs' service awards in the amount of $1,500 each (total, $3,000); (iv) approving the award of Plaintiffs' litigation expenses and Plaintiffs' counsel's fees in the amount of $400,000; and (v) dismissing the case without prejudice, to automatically convert to a with-prejudice dismissal after 60 days. Defendants do not oppose the motion.

## II.   DISCUSSION

### a.   Request for approval of settlement

Generally, FLSA claims can be compromised only after a court reviews and approves the settlement. *See Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 165 (5th Cir. 2015). In the context of individual actions, the Fifth Circuit has "excepted, from this general rule, unsupervised settlements that are reached due to a bona fide FLSA dispute over hours worked or compensation owed." *Id.* (citing *Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2015)). The Fifth Circuit has yet to decide the extent to which courts are to scrutinize FLSA class actions. But district courts in this circuit, including this one, have approved an FLSA class settlement only after determining whether the proposed settlement (1) resolves a bona dispute (2) in a fair and reasonable way. *See, e.g.*, *Halleen v. Belk*, No. 4:16-cv-55-ALM, 2018 WL 6701278, at *1–*4 (E.D. Tex. Dec. 20, 2018); *Dyson v. Stuart Petroleum Testers, Inc.*, No. 1:15-cv-282-RP, 2016 WL 815355, at *2 (W.D. Tex. Feb. 29, 2016); *Lee v. Metrocare Srvs.*, No. 3:13-cv-2349, 2015 WL 13729679, at *1 (N.D. Tex. July 1, 2015).

The first question is whether a bona fide dispute over hours worked or compensation owed exists. Plaintiffs assert they are entitled to recover for all rest breaks taken during overtime weeks. This means that in a workweek where an individual worked Monday through Saturday, they would recover for each of the 15-minute breaks taken Monday through Saturday (30 minutes per day; three hours total). Defendants, on the other hand, assert that in the same week, the individual could only recover for the breaks taken on Friday and Saturday (30 minutes per day; one hour total). This bona fide dispute was raised to the Court through the Parties' cross-motions for summary judgment. The voluminous briefing of those motions illustrates the nature of the bona fide dispute.

Additionally, there is a bona fide dispute over whether Defendants acted in good faith. Defendants contend that they, in good faith, relied on the advice of counsel. This issue dominated the Parties' second mediation, further illustrating a bona fide dispute. If Defendants ultimately were successful on this issue, Plaintiffs could not recover liquidated damages. The settlement, which provides for a portion of liquidated damages, represents a resolution of this strongly contested issue. Similarly, Defendants dispute that any violation of the FLSA was willful. To trigger FLSA's extended three-year statute of limitations, Plaintiffs must prove a willful violation. This is irrelevant to the Plaintiffs and Opt-In Plaintiffs (other than the Late Opt-Ins), but is highly relevant to the Late Opt-Ins, who would not be able to pursue their claims under the two-year statute. A bona fide dispute exists as a result.

The Court must thus determine whether the class action settlement is fair and reasonable. "Although the class-action provisions of Federal Rule of Civil Procedure 23 technically do not apply to collective actions under the FLSA, Rule 23(e) is similar because it requires court approval to finalize a proposed class action settlement." *Cunningham v. Kitchen Collection, L.L.C.*, No. 4:17-CV-770, 2019 WL 2865080, at *1 (E.D. Tex. July 3, 2019). As a result, courts often utilize

the Rule 23(e) standard to determine whether a FLSA collective action settlement is fair and reasonable. *Id.*; *see also Jones v. JGC Dall. L.L.C.*, No. 3:11cv2743-O, 2014 WL 7332551, at *3 (N.D. Tex. Nov. 12, 2014).

> There are six focal facets [under Rule 23(e)]: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Id.*; *see also Reed v. Gen'l Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). The Court addresses each of these factors in turn.

First, "[t]he Court may presume that no fraud or collusion occurred between counsel in the absence of any evidence to the contrary." *Lee v. Metrocare Servs.*, 3:13-CV-2349-O, 2015 WL 13729679, at *5 (N.D. Tex. July 1, 2015). "The use of a mediator during settlement negotiations is an indication that the settlement negotiations were fair and non-collusive." *Vassallo v. Goodman Networks, Inc.*, No. 15-CV-97-LG-CMC, 2016 WL 6037847, at *2 (E.D. Tex. Oct. 14, 2016). Here, the Parties attended two separate, arms'-length mediation sessions; they were represented by experienced counsel; and they had the benefit of extensive informal discovery. Furthermore, there is no evidence of fraud or collusion before the Court. This factor, thus, favors approval of the settlement.

Turning to the second factor, "[w]hen the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Vassallo*, 2016 WL 6037847, at *2. This is an FLSA collective action of substantial complexity. The Parties assert that, had they not settled, the litigation would have cost the Parties and Court significant time and resources. These considerations support a finding that the settlement is fair and reasonable. *Vassallo*, 2016 WL 6037847, at *2; *see also*

*Cunningham*, 2019 WL 2865080, at *2 ("There is also no question that, if the case proceeded to trial, this would impose high costs on all parties. Accordingly, the reasonableness of approving the parties' settlement is strengthened as ongoing litigation threatens to impose high costs of time and money.").

The goal of the third factor is to "evaluate[] whether 'the parties and the district court possess ample information with which to evaluate the merits of the competing positions.'" *Cunningham*, 2019 WL 2865080, at *2. Here, although no formal discovery occurred, the Parties informally exchanged many voluminous documents, including compensation records, the CBA, Department of Defense contracts and documents relating to Defendants' good faith defense. The Parties spent months reviewing records and conferring to determine the appropriate time period, to calculate damages, and to assess the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses. While certain discovery—including oral discovery—would remain to be completed if the settlement is not approved, all of the critical documents have been exchanged and the Parties have enough information to have meaningfully assessed the claims, defenses and settlement positions. The Court finds the Parties have had the opportunity to evaluate the merits of their respective positions, and this factor favors approval of the settlement.

The fourth factor, which is the most important factor absent fraud and collusion, considers the probability of the Plaintiffs' success on the merits. *Cunningham*, 2019 WL 2865080, at *2 (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)). When analyzing this factor, courts must judge the terms of the proposed settlement against the probability that the class will succeed in obtaining a judgment following a trial on the merits. *Id.* (citing *Reed*, 703 F.2d at 172). However, the court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Id.*

It is Plaintiffs' position that they would succeed on the merits and be entitled to the full amount of overtime wages that they seek, and the settlement makes them whole in this regard. However, as illustrated by the fully briefed cross-motions for summary judgment, Defendants have arguments that damages are much less substantial, and Plaintiffs acknowledge it is possible that they would not succeed on the merits or recover their requested relief. Defendants have also put forth a good faith defense. The defense was a significant subject of discussion at the mediation, with Defendants setting forth facts and law that could support a good faith defense such that Plaintiffs would not be entitled to any liquidated damages. The settlement provides some liquidated damages and represents a fair and reasonable settlement, particularly because it provides make-whole overtime relief to the vast majority of the Opt-In Plaintiffs (other than the Late Opt-Ins) and because Plaintiffs might not recover any liquidated damages if they were to proceed to trial. As for the Late Opt-Ins, not only would these same issues apply to them, but further, they would need to prove a willful violation to recover at all. According to Plaintiffs, this challenge—combined with the fact that they missed the opt-in deadline—justifies their lesser recovery as a proportion of the overtime they allege was due. The Court finds this factor weighs in favor of approving the Settlement Agreement.

The fifth factor examines the range of possible recovery by the class. *Cunningham*, 2019 WL 2865080, at *3. This factor primarily concerns the adequacy of the proposed settlement. *Id.* (citing *Ayers*, 358 F.3d at 370). The proposed settlement, which provides relief above the full amount of overtime Plaintiffs claimed, is fair and reasonable in light of the risk that Plaintiffs could lose the cross-motions for summary judgment or that Defendants could succeed on their good faith defense and no liquidated damages would be awarded. The recovery that the settlement provides to the Late Opt-Ins is less, as a percentage of the possible recovery, than that of the other Plaintiffs

and Opt-In Plaintiffs. However, this is a reasonable compromise given that they missed the deadline to join the case and given that they would need to prove a willful violation. Overall, the Settlement Agreement is adequate.

The sixth factor refers to the opinions of counsel and the class representatives. *Cunningham*, 2019 WL 2865080, at *3. This case has the benefit of experienced attorneys on both sides. The Parties and their attorneys agree that the settlement is a fair and reasonable resolution of a bona fide dispute. Therefore, this factor supports a finding in favor of approving the Settlement Agreement.

After considering the *Reed* factors, the Court finds that the Settlement Agreement should be approved because it is a fair and reasonable settlement of a bona fide dispute. *Id.*; *see also Vassallo*, 2016 WL 6037847, at *3.

### b. Request for service awards

In addition to the settlement checks, Plaintiffs seek approval of service awards in the amount of $1,500 each for Plaintiffs Joseph Waggoner and Clifford Tefteller. According to Plaintiffs, these service awards will compensate them for their over two years of participation in this case, including coming forward; working with counsel to bring this case on behalf of their coworkers; assisting counsel with their factual investigation; reviewing the allegations of the complaint; conferring throughout the litigation on both strategy and factual development; and conferring with counsel throughout the settlement process, including the two mediation sessions.

"Service awards to class representatives are permissible where they are fair and reasonable." *Cunningham*, 2019 WL 2865080, at *3 (quoting *Lee*, 2015 WL 13729679, at *4 (citing *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012))). The service awards here are lower in amount then the cited incentive awards found in similar cases and

compensate the individuals for their additional time and service in this case. *Cunningham*, 2019 WL 2865080, at *3 (citing *Purdie v. Ace Cash Express, Inc.*, CIV.A. 301CV1754L, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) (approving $16,665 incentive award to named plaintiffs for actively participating in the lawsuit); *Camp v. Progressive Corp.*, CIV.A. 01-2680, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004) (awarding up to $10,000 incentive payments to class representatives)). The Court finds the requested awards fair and reasonable considering the named-Plaintiffs' assistance.

### c. Request for attorneys' fees and expenses

Plaintiffs seek approval of an award of $400,000 for Plaintiffs' attorneys' fees and expenses incurred in bringing this litigation. During the course of the litigation, Plaintiffs' counsel incurred over $550,000 in fees and $45,000 in expenses. *See* Docket No. 152-2 ¶¶ 5–7. However, in order to reach a settlement that is in the best interest of the Plaintiffs and Opt-In Plaintiffs, counsel was willing to accept and seek approval of a lesser fee.

" '[T]o fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees.' " *Cunningham*, 2019 WL 2865080, at *3 (quoting *Dyson v. Stuart Petroleum Testers, Inc.*, No. 1-15-CV-282-RP, 2016 WL 815355, at *4 (W.D. Tex. Feb. 29, 2016) (quoting *Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998))). In common fund cases, courts in the Fifth Circuit are permitted to use either the percentage method or the lodestar method to calculate attorneys' fees. *Cunningham*, 2019 WL 2865080, at *3 (citing *Union Asset Mgmt. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012)).

The lodestar method is used to calculate attorneys' fees for purposes of fee awards. *Cunningham*, 2019 WL 2865080, at *4 (citing *Tollett v. City of Kemah*, 285 F.3d 357, 367–68 (5th

Cir. 2002)). In calculating a lodestar, the number of hours reasonably expended by the attorneys are multiplied by an appropriate hourly rate in the community for such work. *Id.* (citing *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003)). The party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *Id.* (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)). The Court then uses this as a benchmark and excludes any time that is excessive, duplicative, unnecessary or inadequately documented. *See id.* The hours remaining are those reasonably expended. *Id.*

After calculating the lodestar, the Court may either: (1) accept the lodestar figure or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors. *Cunningham*, 2019 WL 2865080, at *4 (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (referring to *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974))).[4] However, the lodestar is presumed to be reasonable and should only be modified in exceptional cases. *Cunningham*, 2019 WL 2865080, at *4 (citing *Watkins*, 7 F.3d at 457).

As of January 8, 2020, when the Parties attended the second mediation of this matter, Plaintiffs' counsel at DiCello Levitt Gutzler LLC ("DLG") had spent over 1,100 hours on this

---

[4] The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *Cunningham*, 2019 WL 2865080, at *4, n. 3 (citing *Johnson*, 448 F.2d at 717–19).

case, totaling well over $500,000 in fees.[5] Docket No. 152-2 ¶ 6. DLG has also incurred over $45,000.00 in expenses. *Id.* Co-counsel Ward, Smith and Hill incurred approximately $50,000 in fees and additional expenses. *Id.* Plaintiffs' counsel's expenses in this mater include legal research costs, travel costs relating to attending two mediation sessions and postage and copying costs. They also including significant expenses relating to issuing notice and opting in approximately 500 individuals before notice issued. *Id.* ¶ 7. Plaintiffs' counsel's office individually interviewed each of the approximately 500 Opt-Ins who joined this litigation before conditional certification, which required multiple phone calls and correspondence. According to Plaintiffs, Defendants' assertion of "gap time" and the briefing required relating to the cross-motions for summary judgment, injecting issues not frequently seen in FLSA actions that necessitated briefing on issues that are potentially unsettled in the jurisdiction and in the federal courts.

Texas district courts have found hourly rates between $100 and $600 to be reasonable in FLSA cases after considering the experience of the lawyers, the reputation of the firm and the complexity of the case. *Cunningham*, 2019 WL 2865080, at *5 (citing *Olibas v. Native Oilfield Servs., L.L.C.*, 104 F. Supp. 3d 791, 810 (N.D. Tex. 2015), *aff'd sub nom. Olibas v. Barclay*, 838 F.3d 442 (5th Cir. 2016); also citing *Aguayo v. Bassam Odeh, Inc.*, 3:13-CV-2951-B, 2016 WL 7178967, at *15 (N.D. Tex. Dec. 8, 2016)). The evidence provided in Laura Reasons's declaration demonstrates that Plaintiffs' counsel are experienced class action and FLSA attorneys, who are well-versed in litigating complex FLSA collective actions. The Court finds the hourly rates reported by Plaintiffs' counsel to be reasonable in light of the attorneys' experience, the relevant rates for similar attorneys in this community and the specific facts of this case.

---

[5] DLG's paralegals charge $250 per hour. Its attorneys charge between $525 per hour (senior associate) and $975 per hour (named partner). Laura Reasons performed a large percentage of the work performed by lawyers at the rate of $650 per hour. Docket No. 152-2 at n. 2.

Finding both the hours expended and hourly rates reasonable, the Court finds the lodestar calculated by the Parties of $400,000 to be accurate. The lodestar is presumed to be reasonable and should only be modified in exceptional cases. *Cunningham*, 2019 WL 2865080, at *5 (citing *Watkins*, 7 F.3d at 457). The Court may choose to accept the lodestar figure or decrease or enhance the figure after considering the *Johnson* factors cited above. Here, each of the *Johnson* factors supports the relief sought, and the Court approves an award of Plaintiffs' counsel's fees and expenses in the amount of $400,000.

## CONCLUSION

Having reviewed the Settlement Agreement and Release (Docket No. 153-1), the Court is satisfied it represents a reasonable compromise of the disputed claims in this action. Accordingly, the Unopposed Motion to Approve Settlement, for an Award of Fees and Expenses and for Entry of Final Order and Judgment and Memorandum in Support (Docket No. 152) is **GRANTED**. It is further

**ORDERED** that the case is finally certified as a collective action, for settlement purposes only, pursuant to 29 U.S.C. § 216(b).[6] It is further

**ORDERED** that the settlement, as set out in the Parties' Settlement Agreement and Release (Docket No. 153-1), is approved as fair, reasonable and adequate under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. It is further

---

[6] Final certification of a collective action is not necessary prior to approval of a FLSA settlement. *Vassallo v. Goodman Networks, Inc.*, No. 15CV97-LG-CMC, 2016 WL 6037847, at *1 (E.D. Tex. Oct. 14, 2016) (citing *In re Wells Fargo Wage & Hour Emp't Practices Litig. (No. III)*, 18 F. Supp. 3d 844, 853 (S.D. Tex. 2014)). However, in an abundance of caution, Plaintiffs seek final certification of the FLSA collective action.

**ORDERED** that the total settlement amount of $1,106,000 is approved, which will be used to pay the claims of the Plaintiffs, Opt-In Plaintiffs and Late Opt-In Plaintiffs; the Plaintiffs' service awards; and Plaintiffs' attorneys' fees and expenses. It is further

**ORDERED** that Plaintiffs' Service Awards are approved in the amount of $1,500 each ($3,000 total) to Plaintiffs Joseph Waggoner and Clifford Tefteller. It is further

**ORDERED** that Plaintiffs' attorneys' fees and expenses are approved in the amount of $400,000. Finally, it is

**ORDERED** that the above-referenced cause of action is dismissed without prejudice, each party to bear its own fees and costs except as described herein, to convert to a with prejudice dismissal sixty (60) days after the date of this Order.

**IT IS SO ORDERED.**

**SIGNED this 16th day of June, 2020.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE